CORTIS STEWART, Respondent, v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, July 7, 1910.

1. NEGLIGENCE: Master and Servant: Personal Injuries. Plaintiff, a laborer with no special experience, was assisting in lower-scaffolding from the top of a water tank that was being constructed by defendant. The work was being done under the immediate supervision and direction of a foreman of the defendant. One end of the rope would be fastened to the piece of scaffolding to be lowered and the other end was wrapped around a rafter on top of the tank, and was then held by plain-

tiff who gradually lowered the timber to the ground. After one or two pieces had been lowered in this way, a double piece of scaffolding, twice the weight of the former pieces, was fastened to the rope without plaintiff's knowledge, and in attempting to lower it the timber could not be controlled by plaintiff; the rope slipped through his hands and plaintiff was jerked off the tank, fell to the ground and was injured. *Held*, that the evidence was sufficient to go to the jury on the question of the foreman's negligence in permitting the two-piece timber to be attached to the rope under the circumstances.

2. **MASTER AND SERVANT: Vice-Principal.** Where a foreman is in charge of the work with full authority to control the same, the manner of doing it and to provide the means and appliances, with authority to command and control the servants under him as to the work which they should do and the manner of doing it, under such circumstances the foreman would be the *alter ego* or vice-principal of the master, for whose actions in such capacity the master would be responsible.

3. ————: **Safe Place to Work: Duty of Master.** It is a duty inherent in the master that he shall exercise ordinary care in providing means and appliances reasonably safe and suitable for the servant to work with in the discharge of the duties of his employment, and that he will in the conduct of the business use such care in controlling the work of the servant to the end that he shall not be exposed to hazzard not ordinarily incident to the service.

4. **PERSONAL INJURIES: Damages: Excessive Verdict.** Plaintiff, a common laborer, was injured from a fall from a water tank, the fall being the result of the defendant's negligence. He was taken to the hospital in a helpless condition, where he remained for two months, and was discharged on crutches. His ankle was stiff, and his physicians told him the ligaments were broken and that his injuries were permanent. At the trial, after three years, he was not physically able to work and could not wear heavy clothing. *Held*, that a verdict of $5000 was not excessive, so as to show passion or prejudice on the part of the jury.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*S. H. West* and *Wammack & Welborn* for appellant.

(1)    Where there is no substantial proof of the charge of negligence contained in the petition, the court should sustain a demurrer to the evidence.    Waldheir v. Railroad, 71 Mo. 514; Kennedy v. Railroad, 128 Mo. App. 297; McGrath v. Transit Company, 197 Mo. 97; Feary v. Railroad, 162 Mo. 75; Kane v. Railroad, 112 Mo. App. 650; Bromley v. Lumber Co., 127 Mo. App. 158.    (2)    The verdict of $5000 should not be permitted to stand.    Waddell v. Railroad, 113 Mo. 8; Taylor v. Railroad, 185 Mo. 239; Bragg v. Railroad, 192 Mo. 331; Haynes v. Trenton, 108 Mo. 124.

*J. L. Downing* and *H. H. Larimore* for respondent.

(1)    A servant assumes the ordinary risks of his employment; but not unknown perils arising from the negligent direction of the work.    Schroed v. C. & A. L. Co., 108 Mo. 322.    (2)    It was negligence on part of defendant to cause an increased burden to be attached to end of rope plaintiff was handling without notifying him of the increased burden.    Chambers v. Chester, 172 Mo. 461.    (3)    The presumption that work done in usual way is reasonably safe, is overthrown when the evidence shows that means in general use are characterized by negligence.    Reed v. Railroad, 94 Mo. App. 371; Mason v. Mining Co., 82 Mo. App. 370; Mellia v. Railway, 115 Mo. 205.    (4)    The whole work being done under the eye and direction of the foreman, it was his duty to see that reasonable precautions were taken, and if the work was negligently done, it was the negligence of the company.    Combs v. Construction Co., 205 Mo. 367.    Halliburton v. Railroad, 58 Mo. App. 27.

NIXON, P. J.—The amended petition in this case alleges that on the 27th day of March, 1903, defendant was operating a railroad and had a station in Stoddard county called Zeta, at which plaintiff was employed

by the defendant to assist in building a water tank under the directions of one M. F. House, a foreman of the defendant, and it was the duty of the defendant to carry out the orders of such foreman in constructing said water tank. That under the directions and orders of said foreman, plaintiff was engaged in placing shingles upon the roof of the water tank; that it became necessary to take down from the sides of the tank scaffolding consisting of upright pieces, thirty-two feet in length and of great weight. The charge of negligence is that the foreman of the defendant, in order to hasten the work, and without the knowledge and consent of the plaintiff, negligently, and without regard to the safety of the plaintiff, directed the employees to fasten two upright pieces to a rope held by plaintiff, which said two upright pieces were so fastened to said rope, by which increased weight, occasioned as aforesaid, plaintiff was pulled from the roof of said water tank and fell to the ground, a distance of forty feet; that plaintiff was exercising due care.

The answer was a general denial, a plea of contributory negligence, and assumed risk. The plaintiff obtained a judgment in the sum of five thousand dollars, from which the defendant has appealed.

It appears that on the morning of the accident, plaintiff was working as a common laborer, without any special training or experience, shingling the top of the water tank which had an incline of six feet in twelve. M. F. House, defendant's foreman, on this morning came up on the roof with a coil of rope in his hands and made preparations for lowering the scaffolding surrounding the sides of the tank, which scaffolding consisted of two upright slabs, each sixteen feet in length, and nailed or spliced together at the ends, making a combined length of thirty-two feet; one piece of which, thus nailed, was called a "single bent," and a "double bent" was made by nailing a board across the two pieces, thirty-two feet in length each, thus fastening them, so that the double

bent, when completed, was four slabs sixteen feet in length each; the slabs were two by eight inches in dimension.

The scaffolding was to be lowered by fastening a rope around the top of one of the thirty-two feet uprights, and the other end of this rope was to be held by a man on the top of the tank, who, by letting the rope slip slowly through his hands, would lower the piece to the ground. In this case, there were single bents and double bents surrounding the tank—at intervals, all around it—one of the double bents standing in next to the tank and the other one out from it, the inner timbers of the double bents forming a circle immediately around the tank and the outer ones forming a corresponding circle of greater circumference. The space immediately between the track and the tank was so narrow that these uprights could not stand in pairs, and around this part of the tank they were placed singly. The foreman, as a means of safety to the men on the tank, wrapped the rope (to be held by plaintiff) around one of the rafters above the shingled part, which purpose, it is contended, was sufficient to permit plaintiff to control the play of the rope and let the scaffolding lean gradually until it lay on the ground. The foreman himself let down the first load, which was a single bent. He next called the plaintiff and instructed him as to his duty, fixed the rope for him and told him to hold it until he went down and not to let any slack in it, and remarked that he was afraid "there was someone going to be killed." That he told plaintiff to hold the rope that way until he went down to watch what was going on—"so I can give you instructions. I cannot see what is going on here, and you work according to instructions." That he went below to watch and direct the work from a position where he could see both the plaintiff and those fastening the rope to the end of the scaffolding. This second load was also a single bent and was lowered in safety. Plaintiff then returned to his shingling until again called by

the foreman to prepare for another load, which plaintiff did, fixing the rope as before, and the load started down. Plaintiff testified: "Q. When did the second draft start down? A. After I had made this movement of my rope where he told me to put it, and then it started down as soon as they had prepared their end, or he had given them instructions to start it. Q. Where was he standing when this second draft started? In his same position? A. I Suppose he was; it was where I saw him the second time, and I never knew of him being any place else. When I was fixing the rope he was there, and I suppose they were fixing the rope too. I never saw that; I know only what I was doing. I couldn't see those other parties. Q. As I understand you, you fixed that rope under his personal direction while he was standing on the track out there looking at you on top of the tank? A. Yes, sir; I fixed it like he fixed the other one; that is the way he told me to fix that. Q. He was standing on the track talking to you? A. Yes, sir. Q. Did the draft start immediately after you fixed the rope? A. Yes, sir; he gave instructions for it to start just as soon as I put it around the rafter, but it didn't start very swift at first. I never knew what was tied to it. As it went farther down, it increased in weight and speed considerably. Q. Now, did you get that draft lowered in safety? A. No, sir; that is the one that pulled me off. I couldn't see the men on the ground who fastened the other end of the rope to the top of the upright piece. The second draft was heavier than the first. It hadn't gone but a little distance until I noticed the difference and I called to them to hold up a little on it, that it was more than I could hold, and I hadn't much more than said that, until it was going faster than I could hold it. It was increasing in weight when I called to them to hold up on it and was going with more speed also. Q. How came you to lose your balance on the roof of that tank and fall. A. Well, the increased weight of

the draft was more than I could hold there. I was a good deal like in this position (indicating) ; that was the position I had to be in on the roof, with the rope around this rafter (indicating). Of course, as this coil was back above me, and letting the rope go around, I had to supply myself with rope in order to let it down, and when it got down far enough for the weight to increase, it increased so rapidly that it went like it was greased through my hands and jerked my hand down close to the rafter and jerked me off of the hold I had on the roof; it burned my hand and the skin came off in a few days."

The principal error complained of in this case is the failure of the court at the conclusion of all the testimony to sustain the defendant's demurrer to the evidence.

The ground of negligence alleged in the petition and on which the respondent seeks to establish appellant's liability is that while respondent had been lowering only one of the upright pieces at a time, appellant's foreman, M. F. House, in order to hasten the work, and without informing respondent, and without respondent having any knowledge of what was to be done, negligently directed laborers who were working on the ground to fasten the rope to two of the upright pieces at once, thus doubling the load; that the load was thus doubled, pursuant to the directions of the said foreman, and the increased weight, thus attached, was more than respondent could hold, and it dragged him off the roof. In a subsequent paragraph of his petition, he stated that his fall was occasioned solely by the double burden attached to the rope.

The contention of the appellant is that there is absolutely no proof in the record to sustain the charge that the foreman directed the burden to be doubled immediately before the accident occurred, and that such allegation of the petition is wholly unsupported by any evidence in the case.

The foreman was introduced as a witness for the respondent, and the appellant relied upon his testimony to support its demurrer to the evidence. The witness testified in his direct examination, in part, as follows: "Q. Did you order this scaffolding taken down? A. Yes, sir. Q. Did you order how they should take it down? A. I ordered it taken down. Q. Did you tell them how you wanted it taken down? A. Yes, sir. Q. Did you order them to take it down a whole bent at a time? A. Yes, sir; two uprights. Q. You gave those directions to the men who were taking down this scaffolding? A. Yes, sir. Q. Just previous to the injury to Stewart? A. Yes, sir; I gave directions to Mr. Polsgrove and Mr. Rawlins. Q. To take down a double bent at a time? A. Yes, sir; that was the only way that we could let it down."

On cross-examination the witness testified as follows: "Q. You never gave any specific directions as to how to take it down? A. No, sir. Q. You never told them to put two together here and there? A. No, sir."

On redirect examination he was asked: "Q. That is the reason you told them to lower a whole bent at a time, because you could not lower them in any other way—you say you ordered them to lower them that way? A. Yes, sir; two at a time."

Now it is claimed that the testimony of this witness contains antagonistic and irreconcilable statements of facts, the one tending to sustain the allegations of the petition and the other to disprove them, and that the testimony brings it within the principle of law declared in the case of Oglesby v. Mo. Pac. Ry. Co., 177 Mo. l. c. 296, 76 S. W. 623. A consideration of the testimony of this witness in the light of all the other facts and circumstances produced in evidence does not warrant such a conclusion. The mere fact that he was induced to state, under a very skillful cross-examination, that the directions were general and not specific does not deprive his testimony of all probative force in support of the

vital issues of the case. It will be observed that this witness was in the employ of the appellant company and that his cross-examination proceeded upon very narrow lines. The evidence at all points is uncontradicted that this foreman was not a mere figurehead in the construction of the tank, but that the work was carried on under his charge, and that he was the active controlling force and had the whole work and every detail under his personal supervision and control, with full knowledge of every hazard to which respondent was exposed on this occasion while he was discharging the duties of his employment upon the tank. Not only that; it further appears that the plaintiff was in such a situation that it was impossible for him to know what was on the lower end of the rope, or to protect himself in the lowering of the timbers; and for that very purpose the foreman had placed himself in a position so that the conduct or operation of the work of lowering the bents was under his immediate control. He told the respondent just before the double bent was actually lowered that he would go down and watch the work; that he was afraid someone would be killed. He actually went down on the ground and took an advantageous position from which he could control the situation, and where he could not only see and direct the respondent on the top of the tank, but also the workmen below who were engaged in fastening the rope around the tops of the bents which the respondent was required to lower. If, then, as the evidence tends to prove, the work in which respondent was engaged at the time of his fall from the top of the tank was being conducted under the immediate supervision of the foreman, and such foreman personally authorized, guided and controlled the agencies which produced the accident, then he sufficiently directed the work within the meaning of the petition, and if the same was negligently done, it was the negligence of his employer, and created a liability for which the appellant is responsible.

Under the evidence there could be no question but that there was negligence committed resulting in the respondent's injuries. The negligence complained of, under the circumstances disclosed in this record, was not the acts of the fellow-servants of the respondent, but the negligence of the appellant's foreman. He was in charge of the work, with full authority to control the same, the manner of doing it, to provide the means and appliances, and authority to command and control the servants under him, including the respondent, as to the work which they should do and the manner of doing it. Under these circumstances, the law is beyond question that he was the *alter ego* or vice-principal of the appellant in these matters, and that the appellant was responsible for the manner in which those duties were performed. The rule has been often announced that it is a duty inherent in the master that he shall exercise ordinary care in providing means and appliances reasonably safe and suitable for the servant to work with in the discharge of the duties of his employment. Also, that he will, in the conduct of the business, use such care in commanding and controlling the work of the servant to the end that he shall not be exposed to hazard not ordinarily incident to the service.

This case was tried both by the respondent and the appellant on instructions as to the liability of the appellant by reason of the negligence of the appellant's servants in fastening two upright pieces instead of one to the rope to be lowered at the same time without the knowledge of the respondent, and the court gave the following instructions at the request of the appellant:

"2. The court instructs the jury that the mere fact, if you find it to be a fact, that the plaintiff received some or all of the injuries complained of at the time and place complained of, such fact will not authorize you to return a verdict in his favor, but, on the contrary, before

you will be justified in giving a verdict to plaintiff you must find that his injuries were occasioned by the neglect of the defendant's agents in fastening two upright pieces instead of one to his rope to be lowered at the same time without the knowledge of the plaintiff and that the additional burden thus imposed, if it was additional burden, was the cause of plaintiff's fall, and that said additional burden was placed on the rope by the direction of the defendant's foreman, House, and that such acts of foreman House was negligence and unless you so find your verdict must be for the defendant."

"3. The court instructs you that although you may find and believe from the evidence that plaintiff's fall and consequent injury was the direct result of fastening two upright pieces to his rope with which he was lowering them, and that they were so attached by the other laborers around the tank, and that such conduct was negligence, yet your verdict must be for the defendant unless you further find and believe that the same was ordered and directed by foreman House."

Under the evidence in the case, no material error was committed in the giving of any of the instructions in the case, and the case was properly tried under the issues made by the pleadings, with sufficient evidence to carry the case to the consideration of the jury.

It is further claimed that the judgment should be reversed because the damages awarded plaintiff were excessive.

The plaintiff, at the time of the accident, was twenty-five years of age, strong, and in perfect health. He fell the distance of forty feet to the ground and was rendered unconscious. He was sent to a hospital at Tyler, Texas, maintained by the defendant, where he remained two months and was discharged on crutches. The trial was had three years after the accident, and the plaintiff at that time could not labor or wear heavy clothing; he could not bend his right ankle. On cross-examination he stated that he left the hospital on the

general surgeon's consent, who told him his injuries were permanent; that when he went there he was helpless; that when he left he could walk with a stick, but not very well; that he could get around the house by the use of a cane, but was not able to do any work. "I can walk better now than I could then. My ankle is still stiff. The physicians told me that the ligaments of my ankle were broken, which is worse than broken bones, as the doctors say. I was at work at the time of the accident as a common laborer." No evidence was introduced by the defendant as to the nature or permanency of plaintiff's injuries.

Under the evidence adduced we are not prepared to say that the judgment for five thousand dollars was so excessive as to warrant the conclusion that it was the product of passion, bias or prejudice on the part of the jury.

Finding no error in the record, the judgment is affirmed. All concur.